**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| BRYAN T. PRATT,      )<br>        Plaintiff  )<br>              )<br>v                    )<br>              )<br>FIRSTSOURCE FINANCIAL SOLUTIONS, )<br>LLC,               )<br>        Defendant  )<br>              ) | Case No.:<br><br>COMPLAINT AND DEMAND FOR JURY<br>TRIAL<br><br>(Unlawful Debt Collection Practices) |

## COMPLAINT

BRYAN T. PRATT ("Plaintiff"), by his attorneys, KIMMEL & SILVERMAN, P.C., alleges the following against FIRSTSOURCE FINANCIAL SOLUTIONS, LLC, ("Defendant"):

### INTRODUCTION

1.     Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and Texas Debt Collection Act, Tex. Fin. Code § 392 *et seq.*

### JURISDICTION AND VENUE

2.     Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy;" 28 U.S.C. § 1331 grants this court original jurisdiction of all civil actions arising under the laws of the United States; and 28 U.S.C. § 1367 grants this Court supplemental jurisdiction over any state law claims .

3.     Defendant conducts business in the State of Texas and therefore, personal jurisdiction is established.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this Judicial District.

5.      Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

6.      Plaintiff is a natural person residing in Plano, Texas, 75025.

7.      Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code Ann. § 392.001(1).

8.      Defendant is a national debt collection company with corporate headquarters located at 7715 NW 48th Street, Suite 100, Miami, Florida 33166.

9.      Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code Ann. § 392.001(6) and (7).

10.     Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## PRELIMINARY STATEMENT

11.     The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute, which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. § 1692 *et seq.*  The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  15 U.S.C. § 1692k.  The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

12.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action.   The substantive heart of the FDCPA lies in three broad prohibitions.   First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."   15 U.S.C. § 1692d.   Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."   15 U.S.C. § 1692e.   And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."   15 U.S.C. § 1692f.   The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

13.     In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."   15 U.S.C. § 1692a.   Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers.   15 U.S.C. § 1692b.

14.     Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors.   The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."   15 U.S.C. § 1692e.

## FACTUAL ALLEGATIONS

15.     Beginning in or around April 2011 and continuing through June 9, 2011, Defendant, and others it retained, constantly and continuously placed harassing and abusive collection calls to Plaintiff seeking and demanding payment for an alleged student loan debt.

16.     Upon information and belief, the alleged debt Defendant was seeking to collect arose out of transactions, which were primarily for personal, family, or household purposes.

17.     On or around April 18, 2011, Defendant sent Plaintiff a letter, seeking and demanding payment for the alleged debt in the amount of $672.07; Plaintiff disputes this amount is owed.  See Exhibit "A," Defendant's April 18, 2011 letter.

18.     Plaintiff never contracted with any company by the name of "Firstsource Financial Solutions, LLC" or agreed to any obligation with "Firstsource Financial Solutions, LLC".  See Exhibit A.

19.     On or about April 25, 2011, Plaintiff mailed a certified letter to Defendant requesting Defendant validate the alleged debt and provide him with proof that he owed the alleged debt; the letter was received by Defendant on May 5, 2011 and signed for by a "Raven Torres."  See Exhibit "B," Plaintiff's April 25, 2011 letter.

20.     With his validation request, Plaintiff also put Defendant on notice that Defendant was to cease and desist from any further telephone communications with him; however despite this request Defendant continued to contact him via telephone.  See Exhibit "B," Plaintiff's April 25, 2011 letter.

21.     During a telephone call placed to Plaintiff's place of employment on May 20, 2011 at 8:45am, Plaintiff advised the representative that he had sent a cease and desist letter, but

Defendant's representative did not care and indicated they would continue to call him.

22.     Defendant also sent a second collection letter on May 24, 2011, seeking payment in the amount of $571.26; Plaintiff disputes owing this amount. <u>See</u> Exhibit "C," Defendant's May 24, 2011 letter.

23.     Defendant and its employees identified as "Carma" and "Kerry," harassed Plaintiff by calling him repeatedly on his cellular telephone and at his place of employment; Plaintiff received at time two (2) to four (4) telephone calls a day from Defendant.

24.     Plaintiff received telephone calls from Defendant on a number of occasions including but not limited to, April 22, 2011 at 9:45am, April 23, 2011 at 9:50am, April 27, 2011 at 4:23pm, April 28, 2011 at 5:56pm, April 29, 2011 at 9:35am, twice (2) on May 3, 2011 at 1:16pm and 3:42pm, and on May 5, 2011 at 8:48am; several telephone calls were also placed to Plaintiff after Defendant received the cease and desist letter and validation request, including twice (2) on May 18, 2011 at 1:50pm and 5:29pm, May 19, 2011 at 6:42pm, twice (2) on May 20, 2011 at 8:43am and 8:45am, May 24, 2011 at 6:52pm, June 1, 2011 at 3:22pm, June 7, 2011 at 7:05pm, June 8, 2011 at 5:51pm and June 9, 2011 at 4:08pm from the following phone number (877) 385-7247. The undersigned has confirmed that this number belongs to Defendant.

25.     At times, Plaintiff would answer the telephone and Defendant would immediately hang up on him, which caused Plaintiff a great deal of annoyance and frustration.

26.     During one discussion, Defendant's employee identified as "Carma," told Plaintiff "that she would continue to call unless he agreed to verify his social security number and address;" Plaintiff politely informed "Carma" that "he did not know who she was and did not

feel comfortable confirming any personal information over the telephone;" in response, "Carma" told Plaintiff that she would continue to call until he did.

27.     During a conversation on April 23, 2011, Defendant's representative "Kerry" failed to identify where he was calling from, initially misrepresenting to Plaintiff that was calling from the "University of Phoenix;" however, Plaintiff recognized the telephone number that "Kerry" was calling from and asked him to identify where he was calling from again,  and "Kerry" then told Plaintiff he was calling from "Firstsource Financial Solutions, LLC".

28.     During that same conversation, "Kerry" told Plaintiff that he "would ruin his credit if he did not agree to give him his personal information."

29.     Defendant has contacted Plaintiff at times and places that were inconvenient to Plaintiff and made known to Defendant as such, including his place of employment.

30.     Plaintiff at all times has disputed owing this debt.

31.     Defendant's actions in attempting to collect the alleged debt were harassing, abusive and highly deceptive.

## CONSTRUCTION OF APPLICABLE LAW

32.     The FDCPA is a strict liability statute. Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232 (5th Cir. 1997).  "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."  Russell v. Equifax A.R.S., 74 F. 3d 30 (2d Cir. 1996); see also Gearing v. Check Brokerage Corp., 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); Clomon v. Jackson, 988 F. 2d 1314 (2d Cir. 1993).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

33.    The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor.  <u>Sprinkle v. SB&C Ltd.</u>, 472 F. Supp. 2d 1235 (W.D. Wash. 2006).  The remedial nature of the FDCPA requires that courts interpret it liberally.  <u>Clark v. Capital Credit & Collection Services, Inc.</u>, 460 F. 3d 1162 (9th Cir. 2006).  "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C §1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer."  <u>Johnson v. Riddle</u>, 305 F. 3d 1107 (10th Cir. 2002).

34.    The FDCPA is to be interpreted in accordance with the "least sophisticated" consumer standard.  <u>See Jeter v. Credit Bureau, Inc.</u>, 760 F.2d 1168 (11th Cir. 1985); <u>Graziano v. Harrison</u>, 950 F. 2d 107 (3rd Cir. 1991); <u>Swanson v. Southern Oregon Credit Service, Inc.</u>, 869 F.2d 1222 (9th Cir. 1988).  The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."  <u>Id.</u>  The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices.  <u>Clomon</u>, 988 F. 2d at 1318.

## COUNT I
## <u>DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT</u>
## <u>15 U.S.C. §1692  et. seq.</u>

35.    In its actions to collect a disputed debt, Defendant violated the FDCPA in one or

- 7 -

more of the following ways:

    a.  When it communicated with the Plaintiff at any unusual; time or place known or which should be known to be inconvenient to the Plaintiff, in violation of 15 U.S.C. §1692c(a)(1);

    b.  When it communicated with the Plaintiff after it  received Plaintiff's April 25, 2011 cease and desist letter, in violation of 15 U.S.C. §1692c(c);

    c.  Harassing, oppressing or abusing Plaintiff in connection with the collection of a debt, by calling Plaintiff repetitively, in violation of 15 U.S.C.§1692d;

    d.  When it caused the Plaintiff's telephone to ring repeatedly or continuously with the intent to harass, annoy or abuse Plaintiff, in violation of 15 U.S.C. §1692d(5);

    e.  When it used false, misleading and deceptive means in connection with the collection of an alleged debt, in violation of 15 U.S.C. §1692e;

    f.  When it falsely represented the character, amount or legal status of an alleged debt, in violation of 15 U.S.C. §1692e(2);

    g.  When it used false, misleading and deceptive means during the initial telephone call by failing to disclose that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, in violation of 15 U.S.C. §1692e(11);

    h.  When it used another business name, company or organization name other than the true name of the debt collector's business, company or organization,

when it told Plaintiff they were calling from the "University of Phoenix" in violation of 15 U.S.C. §1692e(14);

i.   Using unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. §1692f;

j.   Seeking to collect an amount not expressly authorized by an agreement creating the debt or permitted by law in violation of 15 U.S.C. §1692f(1);

k.   Failing to cease collection of the debt until it obtained verification of the debt in violation 15 U.S.C. § 1692g(b);

l.   By acting in an otherwise deceptive, unfair and unconscionable manner and failing to comply with the FDCPA.

## COUNT II
## DEFENDANT VIOLATED THE TEXAS DEBT COLLECTION ACT
## TEX. FIN. CODE ANN. §392, et. al.

36.    In its actions to collect a disputed debt, Defendant violated the FDCPA in one or more of the following ways:

a.   Failing to identify the name of the debt collection agency with the intent to annoy and harass, in violation of Tex. Fin. Code Ann. § 392.302(2).

b.   Causing a telephone to ring repeatedly, with the intent to annoy or abuse the Plaintiff, in violation of Tex. Fin. Code Ann. § 392.302(4).

c.   Seeking to collect an amount not expressly authorized by an agreement creating the debt or permitted by law in violation of Tex. Fin. Code Ann. § 392.303(3).

- 9 -

d.   Using a name other than the true business or professional name of the debt collection while engaged in debt collection in violation of Tex. Fin. Code Ann. § 392.304(1)(A).

e.   Misrepresenting the character, extent or amount of the debt in violation of Tex. Fin. Code Ann. § 392.304(9).

f.   Using false representations or deceptive means to collect a debt in violation of Tex. Fin. Code Ann. § 392.304(19).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, BRYAN T. PRATT, respectfully prays for a judgment as follows:

a.   All actual compensatory damages suffered pursuant to 15 U.S.C. § 1692k(a)(1);

b.   Statutory damages of $1,000.00 for the violation of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.   All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to 15 U.S.C. § 1693k(a)(3);

d.   All actual compensatory damages suffered pursuant to Tex. Fin. Code Ann. § 392.403(a)(2).

e.   Statutory damages of $100.00 for the violation of the Tex. Fin. Code Ann. § 392 et. seq. pursuant to Tex. Fin. Code Ann. § 392.403(e).

f.   All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to Tex. Fin. Code Ann. § 392.403(b); and

g.   Any other relief deemed appropriate by this Honorable Court.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, BRYAN T. PRATT, demands a jury trial in this case.

RESPECTFULLY SUBMITTED

By: /s/ Amy L. Benencoff
Amy L. Bennecoff
Attorney for Plaintiff
Kimmel & Silverman, P.C.
30 E. Butler Pike
Ambler, PA 19002
Phone: (215) 540-8888
Fax: 877-788-2864
Email: abennecoff@creditlaw.com

Dated: 06/13/11